**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GREGORY JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 11-cv-6410 |
| | ) | |
| THE BANK OF NEW YORK, as successor | ) | |
| to JP Morgan Chase Bank, NA, et al., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gregory Jackson ("Plaintiff") alleges that Defendants' agents unlawfully entered his property without his permission, removed many of his personal possessions, and changed the locks. Plaintiff asserts state law claims of trespass, conversion, and invasion of privacy against Defendants Safeguard Properties, LLC ("Safeguard"), Litton Loan Servicing, LP ("Litton"), and The Bank of New York ("BONY"). Plaintiff also has asserted claims of negligence and "willful and wanton conduct" against Safeguard, and claims of promissory estoppel against Litton and BONY.

Before the Court are the summary judgment motions of Safeguard [65] and Litton and BONY [69]. For the reasons stated below, Litton's and BONY's motion [69] is granted in full. Safeguard's motion [65] is granted in part as to Plaintiff's claims of conversion, invasion of privacy, and "willful and wanton conduct" and denied in part as to Plaintiff's claims of trespass and negligence. Plaintiff's claims of trespass and negligence against Safeguard remain pending. This matter is set for status on 8/21/2014 at 9:00 a.m.

# I.  Background

## A.  Local Rule 56.1

Local Rule 56.1(a) requires a party moving for summary judgment to serve and file "(1) any affidavits and other materials referred to in Fed. R. Civ. P. 56(e); (2) a supporting memorandum of law; and (3) a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law, and that also includes: (A) a description of the parties, and (B) all facts supporting venue and jurisdiction in this court."  Local Rule 56.1 further requires that the statement of material facts "consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."  "Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts," the Seventh Circuit has "consistently upheld the district court's discretion to require strict compliance with those rules." *F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005); see also *Petty v. City of Chi.*, --- F.3d ---, 2014 WL 2568264, at *3 (7th Cir. June 9, 2014); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (collecting cases).  The Seventh Circuit likewise has held that "a district court is entitled 'to decide the motion based on the factual record outlined in the [Local Rule 56.1] statements.'" *Koszola v. Bd. of Educ. of the City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (quoting *Markham v. White*, 172 F.3d 486, 490 (7th Cir. 1999)); see also Fed. R. Civ. P. 56(c)(3) ("The court need only consider the cited materials, but it may consider other materials in the record.").

Neither Safeguard's nor BONY's and Litton's statement of facts strictly complies with all of the requirements of Local Rule 56.1(a).  Safeguard's submission comes close to the mark:

although it omits requisite venue and jurisdictional facts, it consists of short numbered paragraphs and includes reasonably specific citations to the materials on which it relies. BONY's and Litton's statement is woefully inadequate. Several of the statements of fact are irrelevant recapitulations of the procedural history of this case, see, *e.g.*, [71] ¶ 1 ("Plaintiff brought this action for damages on September 14, 2011."), and some of the more pertinent facts are not supported by any citations to the record. See, *e.g.*, [71] ¶ 11 ("On or about April 2, 2001, Karen Jackson borrowed $380,000.00 from EquiFirst Corporation (the 'Note')."). Other statements are supported only by reference to the allegations made in Plaintiff's second amended complaint, see, *e.g.*, [71] ¶ 14 ("Karen Jackson defaulted under the terms of her Note and Mortgage and in December 2008, BONY obtained a foreclosure judgment against Karen Jackson. (Plaintiff's Second Amended Complaint, para. 17)."), but because Plaintiff does not dispute these assertions the Court treats them as though they are admissions for purposes of Fed. R. Civ. P. 56(c)(1)(A). The Court is most troubled at this juncture by the fact that BONY's and Litton's substantive legal analysis and argument do not engage or rest on the facts contained in their Local Rule 56.1 statement. Instead, they are predicated upon other evidence in the record, evidence submitted in connection with BONY's and Litton's substantive brief rather than via their Local Rule 56.1 statement. See, *e.g.*, [70] at 6-8.

Yet just as the Court has the discretion to require strict compliance with the local rules, so too is it vested with the discretion to overlook transgressions of the local rules so long as it enforces or relaxes the rules equally as between the parties. *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013). The Court enforces the rules as follows here: the Court will rely only upon properly supported statements made in the parties' Local Rule 56.1 submissions. Material facts cited for the first time in BONY's and Litton's brief in support of summary

judgment will be disregarded. The Court recognizes that taking this course of action may result in a bit of a free ride for BONY and Litton, as Safeguard properly included in its statement of material facts at least some of the facts that BONY and Litton relied upon in the argument section of their brief. Nonetheless, the Court in its discretion concludes that the interest in efficiently resolving the pending motions outweighs any incidental detriment to Safeguard in this regard. More importantly, no prejudice will inure to Plaintiff, who could and did respond to the factual allegations contained in both Safeguard's and BONY's and Litton's statements and submitted facts of his own. See [73] Pl's Facts; [75] Pl.'s Facts. Defendants replied to Plaintiff's additional facts.[1] See [77]; [80].

## B.    Facts

As outlined above, the Court draws the following facts from the parties' Local Rule 56.1 Statements of Fact. See [67], [71], [73], [75], [77], [80]. The Court construes all properly supported facts and draws all reasonable inferences in the light most favorable to Plaintiff, the non-moving party. *E.g.*, *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

This matter concerns real property located at 22980 Kristine Lane in Richton Park, Illinois. [71] ¶ 9; [75] ¶ 9. Plaintiff, who currently resides in Phoenix, Arizona, previously lived at the Kristine Lane residence with his now-ex-wife, Karen Shepard, who was at times relevant to this case known as Karen Jackson. [67] ¶¶ 2, 4; [71] ¶ 10; [73] ¶¶ 2, 4; [75] ¶ 10. On or about April 2, 2001, Karen Jackson borrowed $380,000 from EquiFirst Corporation to purchase the Kristine Lane residence. [71] ¶ 11; [75] ¶ 11. As security for the loan, Karen Jackson executed a mortgage in favor of EquiFirst Corporation. [71] ¶ 12; [75] ¶ 12. The mortgage document also

---

[1] The Court will consider BONY and Litton's replies to Plaintiff's statement of additional facts. Local Rule 56.1 permits the moving party to "submit a concise reply in the form prescribed in [section (b)]. All material facts set forth in the statement filed [by the non-movant] pursuant to section (b)(3)(c) will be deemed admitted unless controverted by the statement of the moving party."

contains Plaintiff's signature. See [73] ¶ 7. However, every time it appears, it is above the wording, "Gregory Jackson, spouse of Karen Jackson, is signing this mortgage solely to waive any and all homestead rights." See *id.*; see also [67] Ex. E at 14, 18, 20, 21. Plaintiff concedes that he "was not on the legal title to the property," [75] ¶ 16, but maintains that he simply signed the documents that he was required to sign to buy the home with his then-wife. [73] ¶ 7. Plaintiff also testified that he made monetary contributions to live in the home, *id.*, and that he was actively involved in attempting to secure a loan modification. [73] ¶ 11. The mortgage was recorded with the Cook County recorder on April 13, 2001. [71] ¶ 12; [75] ¶ 12. The mortgage eventually was assigned to Defendant BONY, a mortgage lender. [67] ¶ 4; [71] ¶ 13; [73] ¶ 4; [75] ¶ 13. BONY recorded the mortgage on December 1, 2008. [71] ¶ 13; [75] ¶ 13. Defendant Litton acted as the mortgage servicing company. [67] ¶ 5; [73] ¶ 5. BONY and Litton concede in their brief that Litton was "the servicer and attorney-in-fact for BONY." [70] at 5.

In 2005 or 2006, Karen Jackson vacated the Kristine Lane residence and moved to Texas. [67] ¶ 8; [73] ¶ 8; [75] Pl.'s ¶ 1. Plaintiff continued to reside in the Kristine Lane residence during the couple's separation and ensuing divorce. [67] ¶ 8; [73] ¶ 8. Plaintiff did not have a lease to the home. *Id.* He testified, however, that he was awarded the Kristine Lane residence pursuant to a court order issued in his divorce proceedings. [73] ¶ 8; [67] Ex. D at 24:17-25:7. Plaintiff similarly states in his responses to Defendants' statements of facts that he "received the rights to the Residence as part of the divorce settlement." [73] ¶ 8; [75] Pl.'s ¶ 1. After the divorce was finalized, at some point in early-to-mid 2009, Plaintiff leased a condominium in Arizona and began splitting his time between Arizona and the Kristine Lane residence as part of a "long-term move" pursuant to which he would "go a week, come back two weeks, whatever."

[73] ¶ 8; [75] Pl.'s ¶ 1; [80] ¶ 1.   Until that time, however, Plaintiff lived exclusively in the Kristine Lane home.

It is undisputed that Karen Jackson defaulted under the terms of her Note and Mortgage. [71] ¶ 14; [75] ¶ 14.   On July 11, 2008, BONY and/or Litton[2] filed a foreclosure action in the Circuit Court of Cook County.   [67] ¶ 10.   Plaintiff and Karen Jackson were both named as defendants.   See [67] Ex. I.   In December 2008, BONY obtained a foreclosure judgment against Karen Jackson.   [71] ¶ 14; [75] ¶ 14.   The Kristine Lane residence was sold at a foreclosure sale in August 2009.   [67] ¶ 11; [71] ¶ 15; [73] ¶ 11; [75] ¶ 15.   Prior to the sale, Plaintiff communicated with Litton to try to obtain a loan modification.   [73] ¶ 11.

Plaintiff went to Arizona in June 2009.   [73] ¶ 47.   Plaintiff claims that the Kristine Lane residence was "secure" when he left and that "all of his personal possessions were in the home." See *id.*   The deposition testimony that he cites in support of these contentions merely states that the house was "okay" and "in perfect condition" when he left, and that his personal items were still there.   [67] Ex. B. at 32-33.   The Court cannot reasonably infer from this testimony that the house was locked or "secure" when Plaintiff left it in June.   Plaintiff did not return to the home at any point between June and late September 2009.   Plaintiff testified that he "never allowed anybody else in the property while [he was] gone."   [67] Ex. B. at 100:20-22; [73] ¶ 39.

In August 2009, Defendant Litton retained Realty Executives Target to prepare the Kristine Lane property for listing.   [75] Pl.'s ¶ 2; [80] ¶ 2.   Realty Executives would submit bids for various tasks, which Litton would approve.   [75] Pl.'s ¶ 2; [80] ¶ 2; [73-6] at 10-11.   Realty

---

[2]The chancery court documents in the record – and of which the Court could take judicial notice in any event – identify BONY as the sole named plaintiff in the foreclosure action.   See [67] Ex. I; [73] Ex. E. Plaintiff avers that "[t]he law firm of Codilis & Associates represented BONY in a foreclosure action against [his] wife as the mortgagor," [75] Pl.'s ¶ 8; [80] ¶ 8, but also contends that Litton filed the foreclosure action, see [73] ¶ 10, and that Codilis & Associates represented Litton and served as "its foreclosure attorneys."   [75]   Pl.'s ¶ 8.   However, Plaintiff does not dispute that BONY obtained a foreclosure judgment in December 2008.   See [75] ¶ 14.

Executives Target dispatched Patrick Sawaska, owner of Amazing Grass, to Kristine Lane to check the occupancy status and provide property maintenance services. [67] ¶ 12; [73] ¶ 12.

It is undisputed that Sawaska went to the Kristine Lane residence on August 21, 2009. [67] ¶ 13; [73] ¶ 13. Sawaska testified that he entered the home through an unlocked sliding glass door. [67] ¶ 14; [73] ¶ 14. Sawaska observed that the home contained a significant amount of personal property. *Id.* Sawaska also noted that the home's basement was flooded and that the railing leading downstairs was moldy. *Id.* Sawaska re-keyed the doors to the Kristine Lane residence and placed a lockbox containing the new key on the front door. [67] ¶ 15; [73] ¶ 15; [75] Pl.'s ¶ 4; [80] ¶ 4. Sawaska used the code "LIT" on the lockbox because the home was a Litton property. [73] ¶ 15; [75] Pl.'s ¶ 4; [80] ¶ 4. Sawaska testified that, although he did not remember doing so in this particular case, he typically placed a sign saying Realty Executives in the front yard of homes that he re-keyed. [73] ¶ 15.

Two days later, on August 23, 2009, Sawaska returned to the Kristine Lane home to take photographs of the personal items inside. [67] ¶ 15; [75] Pl.'s ¶ 4; [80] ¶ 4. When he arrived, he noticed that the front door knob had been broken off. *Id.* Sawaska entered the home and observed that many of the personal belongings were gone, including the TVs, couches, and even bed linens. *Id.* While Sawaska was at the property, a neighbor called the police. [67] ¶ 16; [73] ¶ 16. The police arrived and spoke to Sawaska, who told them that someone had been there and stolen some items. *Id.* Sawaska took some photographs of the property, re-keyed it again, and placed a new lockbox on the front door before leaving. [67] ¶ 17; [73] ¶ 17.

The police were called to the Kristine Lane residence again on August 24, 2009. [67] ¶ 19; [73] ¶ 19. Officer David Jackson conducted a premises exam and gained entry to the home through an unlocked and open back door. *Id.* Officer Jackson walked through the home and

noted that a washing machine, dryer, and bedroom set were present. [67] ¶ 20; [73] ¶ 20. He also observed that no one was in the home and that the basement was flooded and moldy. *Id.* Officer Jackson did not see anything suggesting that Defendant Safeguard Properties, a field service provider that provides property preservation services to the mortgage industry, [67] ¶ 3; [73] ¶ 3, had been in the home. [67] ¶ 21; [73] ¶ 21. Officer Jackson locked the rear door from the inside and locked the front door on his way out. *Id.*

Later that same day, at 11:29 p.m., the police were called to the Kristine Lane residence a third time. [67] ¶ 22; [73] ¶ 22. Officer Andrew Derewonko went to the property and observed someone changing the locks on the home. *Id.* The identity of this individual is unclear from the record, though Officer Derewonko testified that the man told him that he was working for the bank. See [67] Ex. L at 10. Officer Derewonko entered the home. [67] ¶ 23; [73] ¶ 23. He observed that there was no furniture and that the basement smelled moldy. *Id.* Officer Derewonko testified that he left before the individual had completed the re-keying. [67] Ex. L at 25-26.

On September 15, 2009, Defendant Safeguard issued a work order for the Kristine Lane residence to S & J Foreclosure Cleanup Incorporated ("S & J"), a business owned by Steven Clausell. [67] ¶ 27; [73] ¶ 27; see also [73] Ex. A. Safeguard and Litton were parties to a Master Services Agreement, pursuant to which Safeguard agreed to provide field services such as occupancy inspections, maintenance, and preservation services to Litton on certain properties. [67] ¶¶ 24-25; [73] ¶¶ 24-25. Safeguard periodically had performed occupancy inspections for Litton on the Kristine Lane residence since February 2002. [75] Pl.'s ¶ 6; [80] ¶ 6. Plaintiff and Safeguard agree that the Kristine Lane property was on Safeguard's inventory list of properties. [67] ¶ 26; [73] ¶ 26. Plaintiff contends, however, that the work order was issued incorrectly due

to an internal communication breakdown at Safeguard. See [73] ¶ 27; *id.* Ex. C at 41-42. Plaintiff contends that Litton did not order the specific winterization services that S & J was dispatched to perform. See [73] ¶ 27.

Safeguard characterizes S & J as an independent contractor, see [67] ¶ 27; Plaintiff disputes this characterization. [73] ¶ 27; [73] Pl.'s ¶ 1. Plaintiff asserts that Safeguard's "vendors," a term that Safeguard also uses to describe entities like S & J, are "anything but independent." [73] ¶ 27; see also [73] Pl.'s ¶ 1. In Plaintiff's view, Safeguard furnished its vendors with "detailed work orders with very specific tasks to perform within a very specified time." [73] ¶ 27. Plaintiff also points to Safeguard's 66-page policies and procedures manual, which outlines procedures for performing various property perseveration tasks, as evidence of the control that Defendant Safeguard exerted over its vendors. See *id.* Safeguard for its part does not dispute that it provides its vendors with a policies and procedures manual and expects them to follow it. See [77] ¶ 1. Safeguard also concedes that it "has very specific photo requirements for its vendors" that are "driven by the mortgage company client or by Safeguard," *id.* ¶ 3, and that its vendors are subject to a probationary period. *Id.* ¶ 1. The parties agree that Safeguard furnished S & J a 1099 federal tax form at the end of 2009. See [67] ¶ 28; [73] ¶ 28. They also agree that S & J provided its own equipment and crew of workers. [67] ¶ 29; [73] ¶ 29.

Clausell of S & J went to the Kristine Lane residence on September 16, 2009 to determine what he would need to do to complete the work order. [67] ¶ 30; [73] ¶ 30. Clausell entered the home and noted that there was some personal property inside. [67] ¶ 31; [73] ¶ 31. Clausell returned to the Kristine Lane residence on September 17, 2009 to perform the winterization that Safeguard had ordered on September 15. [67] ¶ 32; [73] ¶ 32. On September

18, 2009, Clausell reported to Safeguard that he had completed the work and that the residence was secure when he arrived and was secured by him at his departure. *Id.* Clausell also submitted a bid to Safeguard to remove the personal property in the home, including the "waterlogged" property in the flooded basement. [67] ¶ 33; [73] ¶ 33. Safeguard did not instruct or request that Clausell remove any personal property from the home, [67] ¶ 34; [73] ¶ 34; [73-1], and Clausell testified that neither he nor anyone associated with S & J actually removed any property from the home. [67] ¶ 33; [73] ¶ 33. Clausell did not return to the Kristine Lane residence after he completed the winterization work order on September 17, 2009. [67] ¶ 35; [73] ¶ 35.

At midnight on September 18, 2009, Officer Jackson of the Richton Park Police Department (the same Officer Jackson as above) received a call reporting the presence of a U-Haul trailer at the Kristine Lane residence. [67] ¶ 36; [73] ¶ 36. Officer Jackson stopped the U-Haul trailer, which contained a washing machine, dryer, and table and chairs. See [67] ¶¶ 36-37; [73] ¶¶ 36-37. The driver of the U-Haul trailer told Officer Jackson that his name was Charmane Powells, that he worked for a company called Cyprexx, and that his girlfriend, Sandra Salinas, had given him permission to remove a washing machine and dryer from the Kristine Lane residence. [67] ¶ 36; [73] ¶ 36. Salinas subsequently arrived on the scene and told Officer Jackson that her uncle, William Jackson, had given her permission to remove the washing machine and dryer and, moreover, had given her the code to the lockbox on the front door. [67] ¶ 37; [73] ¶ 37. There is no dispute that Powells, Salinas, and William Jackson were not employees, agents, or independent contractors of Safeguard. [67] ¶ 38; [73] ¶ 38. Plaintiff and Safeguard further agree that Safeguard did not instruct or authorize Powells, Salinas, or William Jackson to enter the Kristine Lane residence or to remove the washing machine and dryer. *Id.*

Later in the day on September 18, 2009, Sawaska returned to the Kristine Lane residence to complete additional work. [67] ¶ 39; [73] ¶ 39. It is unclear what the work was, or which, if any, of the Defendants directed Sawaska to return. Sawaska noticed that washing machine, dryer, and table were missing from the residence. *Id.*

When Plaintiff returned to the Kristine Lane residence approximately a week later, he discovered for the first time that the locks had been changed. [67] ¶ 40; [73] ¶ 40; [73] ¶ 41. Plaintiff also saw a Safeguard sticker on the front door. [67] ¶ 41; [73] ¶ 41. Although Plaintiff asserts that the sticker announced that Safeguard "had been on the premises on behalf of the lender and Litton," [73] ¶ 25 (citing pages 95-97 of his deposition testimony), his deposition testimony unequivocally states that the sticker did not refer to Litton or BONY. [67] Ex. B at 96-97.

Plaintiff contacted Safeguard upon seeing the sign on the door. [67] ¶ 41; [73] ¶ 41. Plaintiff also spoke with Litton, which gave him the code to open the lockbox after he provided the loan number. *Id.* Plaintiff testified that he did not get the code from Litton until Monday, September 28, 2009. See [73] ¶¶ 41-42. After using the code to open the lockbox, Plaintiff entered the house, discovered that his personal property was missing, and called the Richton Park police. [67] ¶ 42; [73] ¶ 42. The responding officer told Plaintiff that he had been called to the residence before, and that the individual at the residence on that day said he was there on behalf of a mortgage company and provided documentation to the officer. [67] ¶ 43; [73] ¶ 43.[3]

Approximately one month later, on October 28, 2009, the Cook County Circuit Court entered an order confirming the foreclosure sale. [71] ¶ 15; [75] ¶ 15; [73-5]. The order

[3] The police evidently did not provide Plaintiff with a copy of the reports documenting their visits to the Kristine Lane residence. After receiving a copy of the September 18, 2009 police report from Safeguard in discovery, Plaintiff called the police to see if his washing machine, dryer, and other items found in the U-Haul were available for him to retrieve. [67] Ex. B at 60-61. The police told Plaintiff that the U-Haul was no longer impounded and that no criminal proceedings had been initiated. *Id.*

provided that "the successful bidder, any insurers, investors, and agents of the Plaintiff, are entitled to and shall have possession of the subject property as of a date 30 days * * * after entry of this order, without further Order of the Court." [75] Pl.'s ¶ 9; [80] ¶ 9; [73-5]. Plaintiff testified that he spoke with Litton's lawyers at some point, and that the lawyers told him that he had until December 1, 2009 to vacate the property. [75] Pl.'s ¶ 8; [80] ¶ 8; [67] Ex. B at 92-94.

Plaintiff estimates his property losses at $74,000. [67] ¶ 48; [73] ¶ 48. Plaintiff also alleges that he suffered emotional damages. [73] ¶ 48. Plaintiff alleges that Safeguard, Litton, and BONY committed trespass, converted his property, and invaded his privacy. Plaintiff further alleges that Safeguard negligently breached its duties to him by wrongfully entering the Kristine Lane residence without giving him notice and by dispossessing him of his personal property. Plaintiff also alleges that Safeguard committed willful and wanton conduct, and that BONY and Litton are liable to him on a theory of promissory estoppel. Defendants have moved for summary judgment on all of Plaintiff's claims. See [65]; [69].

## II.    Legal Standard

Summary judgment is appropriate if, construing all facts and drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 566 (7th Cir. 2012); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence to permit a jury to return a verdict for the nonmoving party. *Carroll*, 698 F.3d at 564 (7th Cir. 2012). This Court

neither judges the credibility of witnesses nor evaluates the weight of the evidence when addressing a summary judgment motion, see *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir.2009); however, Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III.     Analysis

### A.      Trespass

In Count I of his second amended complaint, Plaintiff alleges that "Defendants, their agents, contractors and/or employees entered onto the Plaintiff's Premises without permission or authorization during its foreclosure process and proceedings."  [41] ¶ 31.  Trespass is a tort committed by the "invasion in the exclusive possession and physical condition of land." *Millers Mut. Ins. Ass'n of Ill. v. Graham Oil Co.*, 668 N.E.2d 223, 230 (Ill. App. Ct. 2d Dist. 1996); see also *Desnick v. Am. Broad. Cos., Inc.*, 44 F.3d 1345, 1351 (7th Cir. 1995) ("To enter upon another's land without consent is a trespass."); *Vill. of DePue, Ill. v. Viacom Int'l, Inc.*, 632 F. Supp. 2d 854, 865 (C.D. Ill. 2009).  "In Illinois, one may be liable in trespass for causing a thing or third person to enter the land of another through a negligent act or an intentional act." *Millers*, 668 N.E.2d at 230 (citing *Dial v. City of O'Fallon*, 411 N.E.2d 217, 222 (Ill. 1980)).  That is, someone "can be liable for trespass for an intrusion by a third party if he acts with knowledge that his conduct will, with a substantial degree of certainty, result in the intrusion." *Sak v. CitiMortgage, Inc.*, 940 F. Supp. 2d 802, 804 (N.D. Ill. 2013).  "One is subject to liability for an intentional intrusion on land irrespective of whether he causes harm to a legally protected interest." *Dial v. City of O'Fallon*, 411 N.E.2d 217, 220 (Ill. 1980).

All three Defendants have moved for summary judgment on this claim. They separately raise the same two arguments. First, they contend that Plaintiff cannot prevail because he was not in possession of or entitled to possession of the Kristine Lane residence. See [66] at 8-9 (Safeguard); [70] at 8-9 (BONY and Litton). Second, they contend that they did not personally enter the property and that Plaintiff has not established that they should be vicariously liable for the acts of those who did. See [66] at 9-10 (Safeguard); [70] at 5-8, 9 (BONY and Litton); [76] at 6-7 (Safeguard).[4]

Defendants' first argument cannot carry the day at this stage. Although it is undisputed that Plaintiff did not hold legal title to the Kristine Lane residence, Plaintiff has pointed to evidence in the record from which a jury could conclude that he had a possessory interest in the home at the time of the alleged trespasses. Plaintiff testified that he received the home in a divorce settlement or decree. He also testified that Litton negotiated with him concerning a modification of the loan, that Litton gave him the code to the lock box to the home when he returned to Illinois in September 2009, and that Litton's attorneys told him that he had until December 1, 2009 to vacate the property. A reasonable jury could conclude from this evidence that Plaintiff had a possessory interest in the Kristine Lane residence. Safeguard cites *Falejczyk v. Meo*, 176 N.E.2d 10, 12 (Ill. App. Ct. 1961), for the proposition that "complete and unrestricted title" is required when the property is "vacant." [66] at 8. However, the property in *Falecjzyk* was a vacant lot, *i.e.*, one without improvements on it, not a home whose primary resident was away for a few months. None of the Defendants has pointed to any Illinois case law

─────────────────────

[4] In its reply brief, Safeguard raises the additional argument that neither it nor anyone acting pursuant to its authority could have committed trespass because a provision in the mortgage authorized Litton to enter the property. See [76] at 6-7. This argument was not raised in Safeguard's opening brief and does not appear to be in response to any arguments that Plaintiff made in his opposition brief. Accordingly, the argument is waived and will not be addressed by the Court at this time. See *Nelson v. La Crosse Cnty. Dist. Attorney*, 301 F.3d 820, 836 (7th Cir. 2002).

supporting the proposition that a home is legally "vacant" or "abandoned" under the circumstances presented here, and the burden of proof in demonstrating an abandonment lies with the contesting party. *Cf. Maksym v. Bd. of Election Comm'rs of the City of Chi.*, 950 N.E. 2d 1051, 1060-61 (Ill. 2011); *People v. Burnley*, 5 N.E.3d 324, 327 (Ill. App. Ct. 5th Dist. 2014) ("[T]he victim in the case at bar had not permanently abandoned the Cahokia house in favor of the Shiloh house. She continued to use both houses as her dwellings. Unlike the house in *Roberts*, the victim's Cahokia house was not vacant; many of her belongings remained there.").[5]

Defendants' second argument is that they cannot be held liable for any alleged trespass because the entrants to the property were not their agents. Instead, they argue that the entrants to the property were independent contractors. Generally, a person injured by the tortious act of another must seek relief from the person who caused the injury. *Lawlor v. N. Am. Corp. of Ill.*, 983 N.E.2d 414, 427 (Ill. 2012). The doctrine of *respondeat superior*, which provides that a principal may be liable for the tortious actions of its agent even if the principal itself does not engage in any conduct in relation to the plaintiff, is an exception to this general rule. See *id*. *Repsondeat superior* cannot typically be used to impose on a "principal" vicarious liability for the tortious acts of its independent contractor. *Id.* The determination of whether a particular entity is an "agent" or an "independent contractor" is a factually intensive one. *Uesco Indus. Inc. v. Poolman of Wis., Inc.*, 993 N.E.2d 97, 112 (Ill. App. Ct. 1st Dist. 2013). The analysis turns primarily on the level of control that the alleged agent retains over the performance of its assigned work. *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 279 (Ill. 2004). In a principal-agent relationship, the principal retains the right to control the manner and method in which the work is carried out by the agent. *Uesco*, 993 N.E.2d at 112. By contrast, "[a]n independent

---

[5] The Illinois Mortgage Foreclosure Law provides a definition for "abandoned residential property." See 735 ILCS 5/15-1200.5. None of the Defendants has argued that the Kristine Lane residence meets this definition.

contractor is one who undertakes to produce a given result but in the actual execution of the work is not under the orders or control of the person for whom he does the work but may use his own discretion in things not specified * * * [and] without his being subject to the orders [of the person for whom the work is done] in respect to the details of the work." *Horwitz*, 816 N.E.2d at 279 (quoting *Hartley v. Red Bell Transit Co.*, 176 N.E. 751, 753-54 (Ill. 1931)). Other factors that bear on the question of whether one is properly considered an agent or an independent contractor include "(1) the question of hiring; (2) the right to discharge; (3) the manner of direction of the servant; (4) the right to terminate the relationship; and (5) the character of the supervision of the work done." *Lawlor*, 983 N.E.2d at 427. Plaintiff ultimately bears the burden of demonstrating that the entrants to his property were the agents of the Defendants. *Id.*

BONY is at the top of any putative agency chain. BONY concedes that Litton "was the servicer and attorney-in-fact for BONY," [70] at 5, but there is nothing in the record describing the scope of that relationship or suggesting that BONY had any authority to control the manner or method in which Litton carried out its tasks. See *Sak v. CitiMortgage, Inc.*, 940 F. Supp. 2d 802, 805 (N.D. Ill. 2013). There likewise is no evidence that BONY had anything to do with Litton's retention of Realty Executives Target or Safeguard, or those entities' subsequent enlistment of Sawaska and Clausell. Accordingly, the Court grants BONY's motion for summary judgment on the trespass claim.

Litton is next in line. Plaintiff contends that "sufficient questions of fact exist to suggest that Realty Executives was acting as an agent" for Litton. [74] at 7. In his statement of facts, see [75] Pl.'s ¶ 2, Plaintiff points to evidence that Litton retained Realty Executives to perform services on the Kristine Lane residence; that Litton was Realty Executives' biggest client at one time; that Litton submitted tasks, including securing the property, for bid; and that Realty

Executives would inform Litton of the property's occupancy status and rekey it if necessary, using Litton's desired code. This evidence, which Litton does not dispute, see [80] ¶ 2, is not enough to establish that Realty Executives acted as Litton's agent. It does not speak to the primary question of whether and to what degree Litton controlled the manner and method by which Realty Executives performed its duties. A minimal degree of control can be inferred from Litton's instruction that the lockboxes be secured using a specific code, but this alone does not suggest that Litton had any say over when or how Realty Executives completed the property inspection or securitization. Additionally, the record reflects that Sawaska typically placed Realty Executives signs outside the homes he worked for; there is no indication that Realty Executives held itself out as working on behalf of Litton. No reasonable jury could conclude from these facts that Realty Executives was an agent of Litton, or that the individual vendors it engaged in turn were agents of Litton.

The record is similarly bereft of facts demonstrating that Safeguard acted as an agent of Litton. Plaintiff avers – and Safeguard does not dispute – that Safeguard's mortgage industry clients like Litton "set[] the parameters of the work to be performed" by Safeguard at a given property. See [73] Pl.'s ¶ 4; [77] ¶ 4. Safeguard likewise concedes that Litton "dictates the type of key code is to be used for a lock change on a home, the type of lock box to be employed by Safeguard and even the lock box code." *Id.* As with Realty Executives Target, however, there is no evidence that Litton controlled or supervised Safeguard's work in any respect. Plaintiff's own testimony establishes that the sticker Safeguard placed on the door did not identify Litton. Plaintiff's evidence also demonstrates that Litton did not direct Safeguard to perform the winterization tasks that Clausell completed in mid-September. Additionally, there is nothing showing that Litton issued detailed work orders to Safeguard, that Litton had any role in

17

Safeguard's selection or dispatch of vendors to properties, or that Litton "authorized or instructed the third party to do something, directed the third party's conduct or accepted the proceeds of the trespass with full knowledge of illegality." *Dietz v. Ill. Bell Tel. Co.*, 507 N.E.2d 24, 27 (Ill. App. Ct. 1987). Accordingly, the trespass claim against Litton must be dismissed.

There is a question of fact as to whether Clausell, the vendor retained by Safeguard, acted as Safeguard's agent. Plaintiff argues that the "three-page work order that Safeguard assigned to Clausell contained very specific information about the services to be performed, giving Clausell very little room to make independent decisions about the work to be performed." *Id.* at 8. Plaintiff points to the work order's instructions to complete the work by a particular date and to complete securing the home by performing enumerated tasks if the value of personal property in the home exceeded $300. See [72] at 8 & n.3. Plaintiff also notes that Safeguard instructed Clausell to "remove the Pre-Sale inspection form from the property" and furnished him with a 66-page manual setting forth its detailed procedures for winterization and other work. *Id.* at 8 & n.4. Plaintiff further emphasizes Safeguard's own contentions that it did not instruct or authorize Clausell to remove personal items from the Kristine Lane residence, see *id.* at 9; he argues that this suggests that Clausell "was not in a position to make independent decisions." *Id.* Plaintiff's argument does not specifically reference the Safeguard sign on the property, but he highlights its presence in his statement of facts. Safeguard, which only minimally addressed the agency issue in its opening brief, argues in reply that it did not control the manner of S & J's (or Clausell's) work performance. See [76] at 3-5. Safeguard points to evidence in the record showing that Clausell decided when and how to perform the work, supplied his own tools and was paid as though he were an independent contractor. See [76] at 4. Safeguard further contends that the record is devoid of facts showing that S & J or Clausell had any right to affect Safeguard's legal

relationships. See *id.* (citing *State Sec. Ins. Co. v. Frank B. Hall & Co.*, 630 N.E.2d 940, 945-46 (Ill. App. Ct. 1st Dist. 1994).

Some of the facts suggest that Clausell was an agent of Safeguard, and others suggest that he was an independent contractor; it is not an evidentiary slam dunk either way. In other words, there is a genuine issue of material fact that precludes summary judgment on the issue of whether Safeguard can be vicariously liable for the acts of Clausell. Safeguard has not properly raised any additional arguments regarding Plaintiff's trespass claim. Plaintiff accordingly may proceed to trial on this claim. Safeguard's motion for summary judgment as to this claim is denied.

**B.** **Conversion**

In Count II of the second amended complaint, Plaintiff alleges that Defendants (really, their agents) seized approximately $74,000 of personal property that had been in the Kristine Lane residence. He seeks to hold Defendants liable for the intentional tort of conversion.

"[A] conversion is any unauthorized act, which deprives a man of his property permanently or for an indefinite time." *In re Karavides*, 999 N.E.2d 296, 309 (Ill. 2013) (quotation omitted). "To prove conversion, a plaintiff must establish that (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Loman v. Freeman*, 890 N.E.2d 446, 461 (Ill. 2008) (quoting *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998)).

Defendants are entitled to summary judgment on this count. There is no evidence in the record supporting the fourth element of Plaintiff's conversion claim as to Defendants or any of their purported agents. Plaintiff essentially asks the Court to infer that Clausell and/or Sawaska converted his items because they accessed the Kristine Lane residence. Plaintiff has not

introduced any evidence to counter Clausell's and Sawaska's deposition testimony that they did not remove any of the property; he instead dismisses Clausell's testimony as "self-serving" and not credible because "Clausell had already unlawfully trespassed onto the Premises before having access to [Plaintiff's] property." [72] at 12. Just as Plaintiff's deposition testimony must be taken at face value at the summary judgment stage, however, so too must Sawaska's and Clausell's. See *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("As we have repeatedly emphasized over the past decade, the term 'selfserving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment."). Plaintiff cannot demonstrate a genuine issue of material fact simply by calling into question the credibility of the evidence before the Court. See [74] ("While both Sawaska and Clausell both claim that they never removed any property, whether to believe this testimony should be left to the trier of fact for several reasons."). As it stands, Clausell's and Sawaska's testimony is uncontroverted. There is evidence in the record that Powells, Salinas, and William Jackson assumed ownership over some of Plaintiff's property, but Plaintiff has voluntarily dismissed those individuals from this case and, moreover, has conceded that Safeguard had no affiliation with them. See [73] ¶ 38. Plaintiff is correct that the removal of some items by Powells and Salinas "certainly does not rule out the possibility that Clausell removed other property from the premises," [72] at 12; [74] at 13, but "some metaphysical doubt" is not enough to entitle Plaintiff to present his conversion claim to a jury. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, even if Clausell and Sawaska were acting as agents of one or more of the Defendants, the Defendants cannot be liable for conversion. The motions for summary judgment are granted as to this claim.

### C.     Invasion of Privacy

In Count IV of his second amended complaint, Plaintiff alleges that Defendants invaded his privacy by seizing his possessions and rekeying his home. The core of the tort of invasion of privacy is "the offensive prying into the private domain of another." *Lovgren v. Citizens First Nat'l Bank of Princeton*, 534 N.E.2d 987, 989 (Ill. 1989). The Illinois Supreme Court appears to have left open the question of whether invasion of privacy or intrusion upon seclusion constitutes a cause of action. See *id.* Nonetheless, the Illinois Appellate Court consistently has recognized the standalone tort and has held that a plaintiff must prove four things to prevail: (1) there was an unauthorized intrusion into seclusion; (2) the intrusion would be highly offensive to a reasonable person; (3) the matter intruded upon was private; and (4) the intrusion caused anguish and suffering. *E.g.*, *Cooney v. Chi. Pub. Sch.*, 943 N.E.2d 23, 32 (Ill. App. Ct. 1st Dist. 2010). Safeguard argues that it cannot be liable for this tort because it never entered the property. See [66] at 15. In the alternative, Safeguard contends that Plaintiff's "personal property was removed by an entirely separate third party, and not by Safeguard or its independent contractor, Clausell." *Id.* BONY and Litton similarly contend that Plaintiff has failed to establish that they or their agents intruded upon his seclusion. See [70] at 12. They also argue that Plaintiff cannot prove that the alleged intrusion was highly offensive or caused his alleged injury, *id.* at 11, that he has not alleged "private facts," *id.* at 11-12, and that "any intrusion that can be attributed to BONY and Litton, if at all, is wholly authorized pursuant to the terms of the Mortgage." *Id.* at 12.

Plaintiff's invasion of privacy claim against Litton and BONY must fail because he has not demonstrated that Litton, BONY, or their agents intruded anywhere. The Court notes, however, that it previously rejected BONY and Litton's alternative argument regarding the alleged lack of "private facts." See [36] at 9.

Plaintiff's claim against Safeguard also must fail. Plaintiff has put forth evidence that, when viewed in the light most favorable to him, supports the conclusion that Clausell was acting as Safeguard's agent when he entered the Kristine Lane residence. Plaintiff also has demonstrated the first three elements of the tort. See *Lovgren*, 534 N.E.2d at 989 (Ill. 1989). However, there is no evidence that the intrusion into the home itself caused Plaintiff any anguish or suffering. Plaintiff was not home and was unaware of the intrusion for several weeks. See Restatement (Second) of Torts § 652B cmt. b (1977) ("The invasion may be by physical intrusion into a place in which the plaintiff has secluded himself, as when the defendant forces his way into the plaintiff's room in a hotel or insists over the plaintiff's objection in entering his home."). Plaintiff's damages stem from the loss of his property, see [73] ¶ 48, and, as discussed above, there is no evidence that the intrusion into his property caused that loss. Defendants' motions are granted as to Plaintiff's invasion of privacy claim.

### D. Negligence/Willful & Wanton Conduct

Plaintiff alleges that Safeguard engaged in negligent and/or willful and wanton conduct by breaching its duties "to act as a reasonable and prudent property preservation company during any mortgage servicing activities, foreclosure process and proceedings, and property preservation activities." [41] ¶¶ 43, 56. Plaintiff contends that the breaches occurred when Safeguard and its agents wrongfully entered the Kristine Lane premises and dispossessed him of his personal property. *Id.* ¶ 44; see also ¶ 58. Safeguard has moved for summary judgment on the "willful and wanton" claim on the grounds that "[t]here is no separate and independent tort of 'willful and wanton' misconduct." *Ziarko v. Soo Line R.R.*, 641 N.E.2d 402, 406 (Ill. 1994). Plaintiff concedes that any allegations of "willful and wanton misconduct" cannot support a standalone claim. See [72] at 15. Accordingly, Safeguard is entitled to summary judgment on

the "willful and wanton conduct" claim. However, Plaintiff seeks to "clarif[y]" that his allegations of willful and wanton misconduct are "in connection with his claims for trespass, conversion, negligence, and invasion of privacy." *Id.* To the extent that Plaintiff's clarification is a belated attempt to amend his complaint, the request is denied. Although leave to amend should be "freely" given "when justice so requires," Fed. R. Civ. P. 15(a)(2), the Court has "broad discretion to deny leave to amend [where] the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). And here, Plaintiff has not submitted evidence that any Defendant acted with "either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff," which is required to prove willful and wanton misconduct. *Kirwan v. Lincolnshire-Riverwoods Fire Prot. Dist.*, 811 N.E.2d 1259, 1263 (Ill. App. Ct. 2004). Additionally, Defendants would be prejudiced if Plaintiff were able to introduce new theories and claims at this stage of the case. The Court accordingly treats Plaintiff's willful and wanton misconduct claim as part and parcel of his negligence claim only.

"To succeed in an action for negligence, the plaintiff must establish that the defendant owed a duty to the plaintiff, that defendant breached that duty, and that the breach proximately caused injury to the plaintiff." *Choate v. Indiana Harbor Belt R.R. Co.*, 980 N.E.2d 58, 64 (Ill. 2012); see also *Kirwan*, 811 N.E.2d at 1263. In addition, to prove willful and wanton conduct, a plaintiff must also show "either a deliberate intention to harm or an utter indifference to or conscious disregard for the welfare of the plaintiff." *Kirwan*, 811 N.E.2d at 1263.

Safeguard asserts for the first time in its reply brief that it "did not owe Jackson any duty whatsoever." [76] at 9. Not only is this argument waived, it is also unpersuasive. "[E]very person owes a duty of ordinary care to all others to guard against injuries which naturally flow as a reasonably probable and foreseeable consequence of an act, and such a duty does not depend

upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." *Simpkins v. CSX Transp., Inc.*, 965 N.E.2d 1092, 1097 (Ill. 2012) (quotation omitted).

Safeguard also attacks the proximate cause element of Plaintiff's claim, contending that it cannot be liable on a negligence theory for any illegal conduct committed by Clausell. See [66] at 14. Safeguard argues that any superseding criminal act by a third party relieves the original negligent party of any liability so long as the criminal act was not foreseeable. *Id.* (citing *Rowe v. State Bank of Lombard*, 531 N.E.2d 1358, 1368 (Ill. 1988)). Regardless of whether the removal of Plaintiff's items was criminal, no evidence in the record suggests that it is in any way attributable to the conduct of Clausell. To the contrary, uncontroverted evidence demonstrates that the Kristine Lane home was "secure" both when Clausell arrived and when he left. Moreover, the lion's share of Plaintiff's property was already gone from the home before Clausell ever entered it. Because the evidence cannot support an inference of causation as to the dispossession of Plaintiff's property – this is why Plaintiff's conversion claim fails – Plaintiff cannot by way of his negligence claim seek recovery for that injury.

However, Plaintiff avers that Safeguard vicariously breached its duty of care because its putative agent, Clausell, failed to obtain proper authority to enter the Kristine Lane home, failed to notify Plaintiff before entering the home, and failed to reasonably determine whether the premises had been vacated. To the extent that Plaintiff's trespass claim against Safeguard has survived, so too must this negligence claim, which simply alleges an alternative theory of recovery. See *Dial v. City of O'Fallon*, 411 N.E.2d 217, 220 (Ill. 1980) (explaining distinctions between conduct intended to cause an intrusion on plaintiff's premises, negligent conduct that causes an intrusion, and conduct that is ultrahazardous and causes an intrusion). Safeguard's

motion for summary judgment on the negligence count accordingly is granted in part and denied in part.

### E. Promissory Estoppel

Finally, Plaintiff alleges that Litton and BONY are liable to him under a promissory estoppel theory because he relied to his detriment on representations by Litton's attorneys that he had until December 1, 2009 to vacate the Kristine Lane premises. Litton and BONY contend that they are entitled to summary judgment on this claim. First, they contend that because "Plaintiff admits that he had no discussions whatsoever with Litton or BONY regarding the alleged promise that he would have until December 1, 2009 to live in the property," he "cannot establish that BONY or Litton made an unambiguous promise." [70] at 14. BONY and Litton also contend that Plaintiff's promissory estoppel claim must fail because "he cannot establish that he acted in a definite and substantial character in reliance on the alleged promise," or "that he acted at all." *Id.* at 13. In BONY's and Litton's view, Plaintiff's alleged damages "are the result of the status quo – he was living in Arizona and storing personal belongs in the property. He returned to Arizona and did nothing as to his belongings." *Id.* as 14.

Promissory estoppel is an alternative means of obtaining what is essentially contractual relief under Illinois law. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 566 (7th Cir. 2012). It operates to make a promise binding where consideration is lacking but all other elements of a contract exist. *Id.* To establish the elements of promissory estoppel, "'the plaintiff must prove that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment.'" *Id.* (quoting *Newton Tractor Sales, Inc. v. Kubota*

*Tractor Corp.*, 906 N.E.2d 520, 523-24 (Ill. 2009)).   Detrimental reliance may consist of either an affirmative action or a forbearance based on the promise.  See *Newton*, 906 N.E.2d at 523.

BONY's and Litton's argument that Plaintiff did not communicate with them is not persuasive.  BONY and Litton do not properly dispute Plaintiff's contention that he spoke with Litton's lawyers and was informed that he could remain in the Kristine Lane home until December 1, 2009.  See *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) ("As we have repeatedly emphasized over the past decade, the term 'selfserving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.").  Moreover, it is well established that attorneys generally are agents of their clients, and that clients are bound by the actions their attorneys take in the course of representation.  See, *e.g.*, *Tango Music, LLC v. DeadQuick Music, Inc.*, 348 F.3d 244, 247 (7th Cir. 2003); *Horwitz v. Holabird & Root*, 816 N.E.2d 272, 284 (Ill. 2004).

BONY's and Litton's second argument is more persuasive.  Plaintiff has not pointed to any evidence that, absent the alleged promises from the attorneys, he would have behaved any differently.  Plaintiff argues in his brief that "he could have removed his property had he known that Litton would have ordered Executive Realty to enter the property and change the locks," and that he "could have" removed the property and "avoided the resulting loss and damages that directly flowed from the conduct of BONY and Litton's agent," namely, the removal of his items form the home.   See [74] at 15.  Plaintiff thus offers speculation rather than evidence that he changed his behavior in response to the alleged promises by Litton's attorneys.  Yet once a defendant points out a gap that they believe exists in a plaintiff's case, the plaintiff is "obliged to point to evidence that, if believed by the trier of fact, would be sufficient" to establish his claim.

*Modrowski v. Pigatto*, 712 F.3d 1166, 1170 (7th Cir. 2013). Plaintiff has not carried that burden here.

Moreover, as Plaintiff's own citation to the elements of promissory estoppel indicates, the doctrine is applied when a promise must be "enforced in order to avoid injustice." [74] at 14 (citing *Kalins v. Malco, A Microdot Co.*, 459 N.E.2d 1038, 1045 (Ill. App. Ct. 1984). Here, however, the injustices that Plaintiff seeks to avoid are the removal of his personal items from the Kristine Lane home, and, to a lesser extent, the entry into and rekeying of the home. Plaintiff has not demonstrated that Litton bears any responsibility for these injustices; it follows that Plaintiff should not be able to recover in equity merely because Litton – which provided him with the key code to the home when he requested it – explained the mechanics of the foreclosure process to him.

## IV.    Conclusion

For the reasons stated above, Litton and BONY's motion for summary judgment [69] is granted. Safeguard's motion for summary judgment [65] is granted in part as to Plaintiff's claims of conversion, invasion of privacy, and "willful and wanton conduct." Plaintiff's claims of trespass and negligence against Safeguard remain pending. This matter is set for status on August 21, 2014 at 9:00 a.m.


Dated: August 6, 2014

                                                    Robert M. Dow, Jr.
                                                    United States District Judge